Brandon S. Reif (SBN 214707)
Rachel D. Dardashti (SBN 292126)
REIF LAW GROUP, P.C.
1925 Century Park E, Suite 1700
Los Angeles, CA 90067
Tel: (310) 494-6500
breif@reiflawgroup.com
rdardashti@reiflawgroup.com

Theresa M. Marchlewski (SBN 82429)
Steven M. Phillips - Admitted Pro Hac Vice
Jason M. Yang (SBN 287311)
JACKSON LEWIS P.C.
725 South Figueroa Street, Suite 2500
Los Angeles, California  90017-5408
Telephone:  (213) 689-0404
Facsimile:   (213) 689-0430
marchlet@jacksonlewis.com
steven.phillips@jacksonlewis.com
jason.yang@jacksonlewis.com

Attorneys for Defendants, U.S. BANCORP; U.S. BANCORP
INSURANCE SERVICES, LLC; U.S. BANCORP
INVESTMENTS, INC.; AND U.S. BANK

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM DAN GOTSES, an individual,<br><br>Plaintiff,<br><br>v.<br><br>U.S. BANCORP, a Delaware corporation; U.S. BANCORP INSURANCE SERVICES, LLC, a Wisconsin limited liability company; U.S. BANCORP INVESTMENTS, INC., a Delaware corporation; U.S. BANK, a national bank association; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:  2:17-cv-08670 CBM(AFMx)<br><br>[Assigned for all purposes to the Hon. Consuelo B. Marshall, Courtroom 8B]<br><br>**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**<br><br>Complaint File:       November 30, 2017<br>Pretrial Conference: February 18, 2020<br>Trial:                        March 31, 2020 |

Following pretrial proceedings, pursuant to Federal Rules of Civil Procedure, Rule 16, and Local Rule 16

IT IS ORDERED:

## 1. PARTIES

Plaintiff:     William Dan Gotses ("Plaintiff")

Defendants: U.S. Bancorp Investments, Inc. ("USBI"); U.S. Bancorp; U.S. Bancorp Insurance Services, LLC; and U.S. Bank (collectively "Defendants").

Each of these parties has been served and has appeared.

The pleadings that raise the issues are the Complaint and Answer.

## 2. JURISDICTION AND VENUE

There is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds the jurisdictional minimum.   28 U.S.C. § 1332(a). Venue lies in the United States District Court for the Central District of California because Plaintiff filed the Action in the United States District Court for the Central District of California.

## 3. TRIAL ESTIMATE

Defendants anticipate a 7 to 10 day trial estimate.

Plaintiff anticipates a 7 day trial.

## 4. JURY TRIAL

The trial is to be by jury.

At least seven (7) days prior to the trial date, the parties shall file and serve by email, fax, or personal delivery: (a) proposed jury instructions as required by L.R. 51-1 and (b) any special questions requested to be asked on voir dire.

## 5. ADMITTED FACTS REQUIRING NO PROOF

The parties have not stipulated to any facts.

## 6. STIPULATED FACTS WITHOUT PREJUDICE TO EVIDENTIARY OBJECTIONS

1    The parties have not stipulated to any additional facts.

2    **7.    PLAINTIFF'S CLAIMS**

3    *Plaintiff:*

4    (a)   *Plaintiff plans to pursue the following claims against Defendants:*

5    <u>**First Cause of Action for Breach of Contract and Breach of Implied**</u>
6    <u>**Covenant of Good Faith and Fair Dealing**</u>

7    To prevail on a cause of action for breach of contract, the plaintiff must prove (1)
8    the contract, (2) the plaintiff's performance of the contract or excuse for non-
9    performance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff.
10   *Richman v. Hartley*, 224 Cal.App.4th 1182, 1186 (2014).  "There is an implied covenant
11   of good faith and fair dealing in every contract that neither party will do anything which
12   will injure the right of the other to receive the benefits of the agreement." *Comunale v.*
13   *Traders & General Ins. Co.*, 50 Cal.2d 654 (1958) (internal citation omitted.)

14   Through Plaintiff's and Defendants' representatives live and deposition testimony,
15   Plaintiff will show that Paul Reynolds Senior Vice President of Defendant U.S. Bancorp
16   Investments, Inc., on Defendants' behalf, promised Plaintiff the exclusive right to
17   manage lucrative territories – including, Point Loma, Pacific Beach and University Town
18   Center / La Jolla.  Further, Defendants promised Plaintiff the exclusive right to service
19   all of defendants' customers in the promised territory, including the top 30 existing
20   investment customers.  Defendants also promised Plaintiff that he would have access and
21   cooperation from the Defendants' Private Banking Team as well as access to their
22   clientele.  These promises induced Plaintiff to accept an offer of employment from
23   Defendants.  Unbeknownst to Plaintiff at the same time, Defendants enticed other
24   recruits to join Defendants with similar promises of exclusive access to high net-worth
25   clients.  Despite these promises, Plaintiff was never granted the top 30 clients he was
26   promised during requirement or access to Defendants' Private Banking Team or their
27   customers.  Further, despite being assigned the promised territory when he began his

28

employment with Defendants, Defendants began quickly taking away territory from Plaintiff replacing his promised territory with undesirable branches and clients.

### Second Cause of Action for Disability Discrimination, Harassment and Retaliation

"It is an unlawful employment practice…For any employer…because of physical disability to discharge the person from employment …or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Cal. Govt. C. § 12940(a).  For the purposes of the statute, an employer includes "any person acting as an agent of an employer, directly or indirectly." *Id*.(j)(4). The elements of disability discrimination are: (1) that Plaintiff was Defendants' employee; (2) that Defendants knew of Plaintiffs disability; (3) that Plaintiff was able to perform the essential job duties with reasonable accommodation; (4) that Defendant discharged Plaintiff or subjected Plaintiff to an adverse employment action; (5) that Plaintiff's disability was a motivating reason for Plaintiff's termination / adverse employment action; (6) that Plaintiff was harmed; and (7) that Defendant's conduct was a substantial factor in causing Plaintiff's harm.  CACI 2540.

Testimony from Plaintiff, Defendants and their employees will show that from November 2011 to December 2, 2016, Plaintiff was employed as a Senior Financial Advisor by Defendants.  Plaintiff fully informed Defendants of his diagnosed and documented disabilities of: (1) Vestibular Disequilibrium; (2) Vertigo; and (3) Optokinetic Sensitivity.  On various occasions during his employment, Plaintiff requested and was granted intermittent leave pursuant to CFRA, FMLA and other applicable laws.  Plaintiff's 2014 Performance Review, issued in early 2015, commended the "outstanding job" he was doing with both "internal and external customers." Nevertheless, in December 2014, Plaintiff's human resources contact wrote a note stating that the ultimate goal was to terminate Plaintiff.  After requesting leave in January / February 2015, Defendants planned calls with Plaintiff to demand explanations

from him about how he could prove to them he was appropriately servicing clients in light of his disability. As part of these conversations, Defendants told Plaintiff to stop mentioning his disabilities to others because it was "inappropriate and distracting."

On November 9, 2016, Plaintiff requested intermittent leave for his disabilities. One day after his leave request, managers convened a meeting to discuss terminating his employment.   On the day that Plaintiff's medical certification for leave was due, Defendants' terminated his employment.   Plaintiff provided his medical certification timely and, on December 7, 2016, he was granted leave retroactively.

Harassment is unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. *Id*.(j)(1).

During his employment, Plaintiff was vigilant about his ethical duties and reported securities violations to management.   Throughout his employment his reported his concerns regarding violations of laws, regulations and procedures including, but not limited to, unauthorized trading and falsification of account documentation.   He also reported that an unlicensed employee illegally engaged in securities transactions. Plaintiff also reported his manager, George Fakier, for filling out securities proxy votes for clients.   In October 2016, Plaintiff reported customer complaints against his supervisors to management.   These complaints were never investigated by Defendants. Instead, Defendants retaliated against Plaintiff by taking away territories and customers from Plaintiff, giving him a bad review without foundation and delaying or rejecting certain trades.  Finally, Defendants demanded that Plaintiff transcribe five years of notes in an unreasonably short amount of time.

### <u>Third Cause of Action for Intentional Infliction of Emotional Distress</u>

"A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's

suffering severe or extreme emotional distress; and (3) actual and proximate causation of the  emotional distress by the defendant's outrageous conduct."  *Hughs v. Pair*, 46 Cal. 4th 1035 (2009).

The exhibits and testimony will show that Defendants' wrongful conduct, including their campaign to discredit Plaintiff, unlawful retaliation of Plaintiff and attempt to turn his clients against Plaintiff was outrageous and was intended or to cause emotional distress.  Defendants' wrongful and outrageous conduct caused emotional distress to Plaintiff.

## Fourth Cause of Action for Violation of Federal Family Leave Act

"An eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for… Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C.A. §2611(2). "[A]ny eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave— … to be restored by the employer to the position of employment held by the employee when the leave commenced…" 29 U.S.C.A. § 2614.

Testimony from Plaintiff, Defendants and their employees will show that from November 2011 to December 2, 2016, Plaintiff was employed as a Senior Financial Advisor by Defendants.  Plaintiff fully informed Defendants of his diagnosed and documented disabilities of: (1) Vestibular Disequilibrium; (2) Vertigo; and (3) Optokinetic Sensitivity.  On various occasions during his employment, Plaintiff requested and was granted intermittent leave pursuant to CFRA, FMLA and other applicable laws.  Plaintiff's 2014 Performance Review, issued in early 2015, commended the "outstanding job" he was doing with both "internal and external customers." Nevertheless, in December 2014, Plaintiff's human resources contact wrote a note stating that the ultimate goal was to terminate Plaintiff.  After requesting leave in January / February 2015, Defendants planned calls with Plaintiff to demand explanations

from him about how he could prove to them he was appropriately servicing clients in light of his disability. As part of these conversations, Defendants told Plaintiff to stop mentioning his disabilities to others because it was "inappropriate and distracting."

On November 9, 2016, Plaintiff requested intermittent leave for his disabilities. One day after his leave request, managers convened a meeting to discuss terminating his employment.   On the day that Plaintiff's medical certification for leave was due, Defendants' terminated his employment.   Plaintiff provided his medical certification timely and, on December 7, 2016, he was granted leave retroactively.

## Fifth Cause of Action for Violation of California Family Rights Act

It shall be an unlawful employment practice, "[f]or an employer to refuse to allow an employee disabled by pregnancy, childbirth, or a related medical condition to take a leave for a reasonable period of time not to exceed four months and thereafter return to work, as set forth in the commission's regulations."

Testimony from Plaintiff, Defendants and their employees will show that from November 2011 to December 2, 2016, Plaintiff was employed as a Senior Financial Advisor by Defendants.   Plaintiff fully informed Defendants of his diagnosed and documented disabilities of: (1) Vestibular Disequilibrium; (2) Vertigo; and (3) Optokinetic Sensitivity.   On various occasions during his employment, Plaintiff requested and was granted intermittent leave pursuant to CFRA, FMLA and other applicable laws.   Plaintiff's 2014 Performance Review, issued in early 2015, commended the "outstanding job" he was doing with both "internal and external customers." Nevertheless, in December 2014, Plaintiff's human resources contact wrote a note stating that the ultimate goal was to terminate Plaintiff.   After requesting leave in January / February 2015, Defendants planned calls with Plaintiff to demand explanations from him about how he could prove to them he was appropriately servicing clients in light of his disability. As part of these conversations, Defendants told Plaintiff to stop mentioning his disabilities to others because it was "inappropriate and distracting."

1    During his employment, Plaintiff was vigilant about his ethical duties and reported

2    securities violations to management.  In particular, in October 2016, Plaintiff reported

3    customer complaints against his supervisors to management.  These complaints were

4    never investigated by Defendants.

5    On November 9, 2016, Plaintiff requested intermittent leave for his disabilities.

6    One day after his leave request, managers convened a meeting to discuss terminating his

7    employment.   On the day that Plaintiff's medical certification for leave was due,

8    Defendants' terminated his employment.  Plaintiff provided his medical certification

9    timely and, on December 7, 2016, he was granted leave retroactively.

10    **Sixth Cause of Action for Violation of California Whistleblower Statute**

11    California Labor Code section 1102.5(b) provides: "An employer, or any person

12    acting on behalf of the employer, shall not retaliate against an employee for disclosing

13    information, … a person with authority over the employee or another employee who has

14    the authority to investigate, discover, or correct the violation or noncompliance… if the

15    employee has reasonable cause to believe that the information discloses a violation of

16    state or federal statute, or a violation of or noncompliance with a local, state, or federal

17    rule or regulation, regardless of whether disclosing the information is part of the

18    employee's job duties."

19    During his employment, Plaintiff was vigilant about his ethical duties and reported

20    securities violations to management.   Throughout his employment his reported his

21    concerns regarding violations of laws, regulations and procedures including, but not

22    limited to, unauthorized trading and falsification of account documentation.  He also

23    reported that an unlicensed employee illegally engaged in securities transactions.

24    Plaintiff also reported his manager, George Fakier, for filling out securities proxy votes

25    for clients.   In October 2016, Plaintiff reported customer complaints against his

26    supervisors to management.  These complaints were never investigated by Defendants.

27    Instead, Defendants retaliated against Plaintiff by taking away territories and customers

28

from Plaintiff, giving him a bad review without foundation and delaying or rejecting certain trades.  Finally, Defendants demanded that Plaintiff transcribe five years of notes in an unreasonably short amount of time.

**Seventh Cause of Action for Wrongful Termination in Violation of Public Policy**

The elements for Wrongful Termination in Violation of Public Policy are: (1) that Plaintiff was employed by Defendants; (2) that Defendants discharged Plaintiff; (3) that Plaintiff's disclosure of securities violations by Defendants' employees, request for leave and reasonable accommodations and discussion of violation of wage and labor codes were motivating reason for discharge; and (4) that the discharge caused Plaintiff's harm. CACI 2430.

During his employment, Plaintiff was vigilant about his ethical duties and reported securities violations to management.  Throughout his employment his reported his concerns regarding violations of laws, regulations and procedures including, but not limited to, unauthorized trading and falsification of account documentation.  He also reported that an unlicensed employee illegally engaged in securities transactions.  Plaintiff also reported his manager, George Fakier, for filling out securities proxy votes for clients.  In October 2016, Plaintiff reported customer complaints against his supervisors to management.  These complaints were never investigated by Defendants.  Instead, Defendants retaliated against Plaintiff by taking away territories and customers from Plaintiff, giving him a bad review without foundation and delaying or rejecting certain trades.  Finally, Defendants demanded that Plaintiff transcribe five years of notes in an unreasonably short amount of time.

Further, Testimony from Plaintiff, Defendants and their employees will show that from November 2011 to December 2, 2016, Plaintiff was employed as a Senior Financial Advisor by Defendants.  Plaintiff fully informed Defendants of his diagnosed and documented disabilities of: (1) Vestibular Disequilibrium; (2) Vertigo; and (3)

Optokinetic Sensitivity.  On various occasions during his employment, Plaintiff requested and was granted intermittent leave pursuant to CFRA, FMLA and other applicable laws.  Plaintiff's 2014 Performance Review, issued in early 2015, commended the "outstanding job" he was doing with both "internal and external customers." Nevertheless, in December 2014, Plaintiff's human resources contact wrote a note stating that the ultimate goal was to terminate Plaintiff.  After requesting leave in January / February 2015, Defendants planned calls with Plaintiff to demand explanations from him about how he could prove to them he was appropriately servicing clients considering his disability. As part of these conversations, Defendants told Plaintiff to stop mentioning his disabilities to others because it was "inappropriate and distracting."

During his employment, Plaintiff was vigilant about his ethical duties and reported securities violations to management.  In October 2016, Plaintiff reported customer complaints against his supervisors to management.  These complaints were never investigated by Defendants.

On November 9, 2016, Plaintiff requested intermittent leave for his disabilities. One day after his leave request, managers convened a meeting to discuss terminating his employment.  On the day that Plaintiff's medical certification for leave was due, Defendants' terminated his employment.  Plaintiff provided his medical certification timely and, on December 7, 2016, he was granted leave retroactively.

**Eighth Cause of Action for Willful Failure to Pay Wages**

"If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately…[and] shall not exceed 72 hours." Cal. Labor C. 201.

Plaintiff's testimony will demonstrate that upon Plaintiff's termination, Plaintiff was due outstanding and owing wages which were not timely paid.

**Ninth Cause of Action for Willful Failure to Indemnify for Expenses**

Cal. Labor Code section 2802 provides: "An employer shall indemnify his or her

employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful."

Plaintiff will testify and documentation will prove that over the course of his employment Plaintiff incurred expenses known to Defendants which were not reimbursed or indemnified by Defendants as required by the Labor Code.

**Tenth Cause of Action for Failure to Provide Reasonable Accommodation in Violation for the Fair Employment and Housing Act**

"Under the FEHA, 'reasonable accommodation' means 'a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired.'" *Cuiellette v. City of Los Angeles*, 194 Cal. App. 4th 757, 766 (2011). "Reasonable accommodations include '[j]ob restructuring, part-time or modified work schedules, reassignment to a vacant position, . . . and other similar accommodations for individuals with disabilities.'" *Swanson v. Morongo Unified School Dist.,* 232 Cal.App.4th 954, 968 (2014). To prove failure to provide reasonable accommodation, plaintiff must show:(1) that Plaintiff was Defendants' employee; (2) that Defendants knew of Plaintiffs disability; (3) that Plaintiff was able to perform the essential job duties with reasonable accommodation; (4) that Defendants failed to provide reasonable accommodations for Plaintiff's disability; (5) that Plaintiff was harmed; and (7) that Defendant's failure to provide reasonable accommodation was a substantial factor in causing Plaintiff's harm.  CACI 2541.

Testimony and exhibits will show that Plaintiff notified Defendants of his disabilities on a number of occasions and was able to perform the duties of his job with reasonable accommodation. However, Defendants failed to reasonably accommodate him and in fact, directed him not to discuss his disability, in violation of the law.

**Eleventh Cause of Action for Failure to Engage in the Interactive Process in**

## Violation of the Fair Employment and Housing Act

"FEHA requires an informal process with the employee to attempt to identify reasonable accommodations." *Nealy v.City of Santa Monica*,  234 Cal.App.4th 359, 379 (2015).  "To prevail on a claim for failure to engage in the interactive process, the employee must identify a reasonable accommodation that would have been available at the time the interactive process occurred. An employee cannot necessarily be expected to identify and request all possible accommodations during the interactive process itself because employees do not have at their disposal the extensive information concerning possible alternative positions or possible accommodations which employers have…" *Id*. (internal citations and quotations omitted).

The testimony and exhibits presented will show that Plaintiff made several efforts to communicate possible accommodations for his known and disclosed disabilities and made repeated requests of Defendants to adjust his office and workspace.  Defendants failed to do so resulting in neck, shoulder and back injuries to Plaintiff.

## 8.   DEFENDANTS' DEFENSES

### Defendant U.S. BANCORP INVESTMENTS, INC.:

(a)   *Defendant USBI plans to pursue the following affirmative defenses:*

#### First Affirmative Defense (Failure To State A Cause of Action)

Plaintiff's Complaint, as a whole, and each purported cause of action alleged therein, fails to state facts sufficient to constitute a cause of action against Defendant.

*Elements Required to Establish This Affirmative Defense:*  See Section 7 above, setting forth the elements required to establish Plaintiff's claims.

*Description of Evidence In Support Of First Affirmative Defense:*

Plaintiff cannot fulfill at least one element of each of his claims for relief:

Claim 1:   Breach of Alleged Oral Contract.

Plaintiff contends that as part of an alleged oral contract, he was promised exclusive territories, choice of office locations, and a choice of Defendant's top

customers residing in California, which promises were supposedly made to lure him to join USBI.

At trial, via exhibits, Plaintiff's deposition and trial testimony and Defendant's witnesses USBI will establish that Gotses' Offer Letter sets forth the terms of his agreement and that Plaintiff was not guaranteed exclusive territories or customers.

USBI will prove that other than the Offer Letter, there are no other legal documents signed by USBI or Plaintiff that set forth the terms of his recruitment package, nor were any of the promises which Plaintiff alleges ever made.

USBI will present evidence that when Plaintiff was hired, no assurances or promises were made that his branch assignments would remain in place. USBI always retained the discretion to change branch assignments. Also, contrary to his assertions, Gotses was not offered stock options or advised that he would have the exclusive rights to service all Defendant's customers residing in the branches in which he worked, and/or the "30 top existing investment customers." Further, at trial, USBI will demonstrate that Reynolds did not have the authority to bind USBI to an employment contract as described by Gotses, and denied that he made any such agreement. USBI will also establish that Plaintiff's claims are time barred as Plaintiff has failed to bring his claim within the applicable statute of limitations.

Claim 1A:  Breach of the Implied of Covenant of Good Faith and Fair Dealing.

The evidence, which includes exhibits, Plaintiff's deposition and trial testimony along with Defendants' witnesses' deposition and trial testimony will establish that Plaintiff and USBI did not enter into a contract other than as set forth in his Offer Letter, nor did USBI breach any contractual duty towards Plaintiff. Accordingly, the breach of the Covenant of Good Faith and Fair Dealing claim fails.

Claim 2:    Disability Discrimination, Harassment and Retaliation.

Plaintiff alleges that throughout his employment he suffered - and Defendant was aware he suffered from — the following documented disabilities: (1) Vestibular Disequilibrium; (2) Vertigo; and (3) Optokinetic Sensitivity.   Plaintiff alleges his disabilities cause, among other things, dizziness and imbalance, loss of equilibrium, spatial disorientation, and visual disturbances, which become exacerbated by stress. Plaintiff alleges he openly discussed and documented his disabilities with Defendant prior to and at the outset of his employment so that he could be reasonably accommodated to ensure he fully performed his work duties to the best of his abilities.

Plaintiff alleges that he was not provided a clean workplace because of dogs coming into the branch area, complained about allergic reactions.

The evidence, including exhibits, Plaintiff's deposition and trial testimony along with Defendants' witness's deposition and trial testimony will establish that Plaintiff was provided all accommodations which he requested regarding his alleged disabilities. Specifically, Plaintiff was given time off whenever he requested it, as well as whatever leave he applied for.   The evidence will also establish, however, that despite repeated requests from USBI, Plaintiff failed to and refused to provide USBI with information and data from his physician regarding what accommodations were necessary.

USBI will demonstrate that when Plaintiff complained about the alleged dog and office issues, the company took prompt action to attempt to alleviate Plaintiff's concerns.

Plaintiff was neither harassed, or discriminated or retaliated against due to any alleged disability. Defendant will also establish that vast portions of this claim are time barred.

Claim 3:      Intentional Infliction of Emotional Distress.

Evidence, which includes exhibits, Plaintiff's deposition and trial testimony along with Defendants' witness's deposition and trial testimony will establish that Defendants did not engage in extreme or outrageous conduct towards Plaintiff or that Plaintiff suffered severe emotional distress as a result of the conduct.

1    Claims of intentional infliction of emotional distress do not extend to personnel

2    management activity, even if discriminatory motivation is alleged. *Janken v. GM Hughes*

3    *Elect.* (1996) 46 Cal.App.4th 55, 80; *Cornblith v. First Maint* (1968) 268 Cal.App.2d

4    564, 565. Even intentional and malicious discipline and criticism does not constitute

5    "extreme conduct".  *See Shoemaker v. Myers* (1990) 52 Cal.3d 1, 25.

6    Liability for IIED does not arise out of "mere insults, indignities, threats,

7    annoyances, petty oppressions, or other trivialities."  *Hughes v. Pair* (2009) 46 Cal.4th

8    1035, 1051.  Examples of conduct ***not*** held to be "extreme and outrageous" include the

9    following: firing an employee without cause, *Buscemi v. McDonnell Douglas Corp*. (9th

10   Cir. 1984) 736 F.2d 1348, 1352 [applying California law]; ostracizing an employee in

11   retaliation for bringing a successful lawsuit against the employer, *McCoy v. Pacific*

12   *Maritime Ass'n* (2013) 216 Cal.App.4th 283, 295; and making false promises of bonuses,

13   *Moncada v. West Coast Quartz Corp.* (2013) 221 Cal.App.4th 768, 780-781.

14   Thus, the evidence will establish that Plaintiff's claim that Defendants attempted to

15   require Plaintiff to utilize Wealth Station, supposedly "delayed or rejected" certain trades,

16   removed him from his position on an advisory panel, refused to make the exceptions

17   requested by Plaintiff with respect his accounts or terminated him for disciplinary issues

18   as a matter of law do not constitute actionable conduct.

19   Additionally, the attempts by the Compliance Department to review and approve

20   Plaintiff's trades, or question him relating thereto, does not constitute "extreme and

21   outrageous conduct".

22                   Claim 4:       Violation of Federal Family and Medical Leave Act.

23   At trial, USBI will establish that Gotses was provided all leave that he requested,

24   when he actually provided the necessary paperwork to qualify for the leave.   The

25   evidence will further establish that on the date that Gotses was terminated, December 2,

26   2017, he had not yet provided the medical certification needed to extend his leave, and in

27   fact, was not on approved leave.  USBI will further establish that Gotses' termination had

28

nothing to do with his application for FMLA or CFRA leave.  Rather, the company had
significant disciplinary issues with Gotses which he had been warned about and which
were discussed with him over a two year period which led to his termination.  While
Gotses did submit a request for medical leave on November 9, 2016, and the following
day, certain USBI managers met to discuss his termination, the date was entirely
considered coincidental and Plaintiff's application for leave was neither mentioned nor a
factor in his termination.  Simply stated, Plaintiff was not terminated because he took
leave.

Claim 5:    Violation of California Family Rights Act

Please see the discussion with respect to the FMLA, above.

Claim 6:    Violation of California Whistleblower Statute.

Plaintiff alleges that during his employment he regularly reported to USBI
supervisors that employees routinely engaged in violations of securities, FINRA,
insurance, and banking laws.  Plaintiff alleges this employee was eventually terminated
because of these complaints. Plaintiff also alleges he reported his manager, George
Fakier, for various securities violations and for threatening and retaliating against
Plaintiff for not sharing a substantial commission with him.

Plaintiff also alleges Dolores McNeely, a bank district manager, told Plaintiff that
she would prohibit her branch employees from referring customers to Plaintiff unless he
agreed to provide free referrals to her branches.

Plaintiff alleges that USBI "acknowledged and confirmed" his complaints
constituted violations yet began a "campaign to discredit and retaliate against him", and
even "used his disabilities as leverage in their retaliation".  Instances of retaliation
allegedly included taking away part of Plaintiff's territory and customers, thus
"undermining his income", as well as threats of termination and poor annual reviews.

The evidence, which includes exhibits, Plaintiff's deposition and trial testimony
along with Defendants' witnesses' deposition and trial testimony will establish that the

alleged complaints made by Plaintiff did not involve securities, FINRA insurance or banking law violations.  Rather, Plaintiff was in general arguing or complaining that things were not being handled in the manner in which he desired.  The evidence will further establish that there was no "campaign" or "conspiracy" to discredit and retaliate against Plaintiff for allegedly raising complaints.  Rather, Plaintiff's supervisors attempted to coach and counsel Plaintiff for his obnoxious, disrespectful, and confrontational behavior, to no avail.  The alleged "complaints" made by Plaintiff were not involved in or reviewed at the time the decision to terminate him was made.

USBI will establish that it had legitimate, nondiscriminatory reasons for terminating Plaintiff.  Plaintiff had numerous documented performance issues over the course of his employment.  He also routinely exhibited inappropriate behavior relating to his trade review, issues with his lack of respect in responding to oversight, and his issues communicating in a respectful manner and intimidating other USBI employees.  Plaintiff persisted in this conduct despite various warnings and counseling.

Plaintiff will also not be able to establish pretext.  While Defendants acknowledge a December 2014 note which stated that the "ultimate goal was termination," Plaintiff was not fired until two years later.  During that two year time, Plaintiff, his supervisors and HR had several coaching sessions with Plaintiff, to no avail.  These sessions were memorialized in contemporaneous notes.

Claim 7:      Wrongful Termination in Violation of Public Policy.

The evidence, which includes exhibits, Plaintiff's deposition and trial testimony along with Defendants' witnesses' deposition and trial testimony will establish that Plaintiff was terminated for legitimate business reasons that were entirely unrelated to his claim to disability or his alleged protected activity.  Please also see the discussion with respect to Claim 6.

Claim 8:      Willful Failure to Pay Wages.

Plaintiff will be unable to establish that any wages were due and owing to him at the time of his termination.  This Court has already determined that he failed to meet the requirements for this 4th year bonus.  In the unlikely event that Plaintiff presents a prima facia case, Defendant will establish, via witness testimony, documentary evidence and Plaintiff's deposition and trial testimony that no wages are or were due and owing to him.

Claim 9:      Willful Failure to Indemnify for Expenses.

The evidence, which includes exhibits, Plaintiff's deposition and trial testimony and Defendants' witnesses' deposition and trial testimony will establish that throughout his employment, Plaintiff failed and refused to provide reports or claims for reimbursement to USBI.  Plaintiff was never told to hold or withdraw his business expense submissions.  He was advised several times that it was expected that he would provide all historic business reimbursements and that going forward all expenses would be submitted within 90 days per company policy.  Nevertheless, Plaintiff failed to provide any of these requested expenses documentation.  Plaintiff's own refusal to properly submit his expenses is the reason that any purported business expenses were not reimbursed.

USBI will further demonstrate that, assuming arguendo, that Plaintiff's claim for expenses was timely, the expenses requested are not reimbursable under the company's expense policy.

Claim 10:     Failure to Provide Reasonable Accommodation.

Plaintiff asserts that despite his request for adjustments to his office and workspace, Defendants "refused" to configure the office and workspace "properly."

The evidence at trial which includes exhibits, Plaintiff's deposition and trial testimony and Defendants' witnesses' depositions and trial testimony will establish that when Plaintiff requested accommodation regarding his workspace, USBI attempted to accommodate him.  Plaintiff, however, refused to cooperate with USBI to allow it to

provide appropriate accommodation. Moreover, to the extent that Plaintiff claims injuries as a result of the company's actions, this claim should and must be adjudicated in the Workers' Compensation arena.

Claim 11:   Failure to Engage in the Interactive Process in Violation of FEHA.

The evidence, including exhibits, Plaintiff's deposition and trial testimony and Defendants' witnesses' deposition and trial testimony will establish that USBI attempted on several occasions to engage in the interactive process with Plaintiff. Despite USBI's attempts, it was Plaintiff who failed and refused to engage in the interactive process, thereby causing the process to break down.

**Second Affirmative Defense**: To the extent discovery may disclose a basis for such defense, any recovery on Plaintiff's Complaint, or any purported cause of action alleged therein, is barred by the applicable statute of limitations including, but not limited to, California Code of Civil Procedure §§ 335.1, 338 and 340; California Government Code §§ 12960 and 12965; and California Business and Professions Code § 17208.

*Elements Required to Establish This Affirmative Defense:*

With respect to Plaintiff's FEHA cause of action, a Plaintiff seeking relief for violation of the Fair Employment and Housing Act ("FEHA") must file an administrative complaint with the DFEH within *one year of the date alleged unlawful practice occurred*. Gov. Code § 12960(d).

Under the FEHA, exhaustion of administrative remedies is "a jurisdictional prerequisite to resort to the court." *Johnson v. City of Loma Lind*, 24 Cal.4th 61, 70 (2000); *see also Campbell v. Regents of Univ. of Cal.* (2005) 35 Cal.4th 311, 321.) The Court has no jurisdiction to hear a cause of action under FEHA, absent a timely and sufficient underlying charge filed with the DFEH.

With respect to his alleged oral contract claims, California Code of Civil Procedure section 337(a) provides that an action upon any contract, obligation, or liability founded upon an instrument in writing must be commenced within four years.   Because Plaintiff filed his complaint on November 30, 2017, his contract claim cannot have accrued before November 30, 2013.

A contract claim accrues "at the time of breach regardless of whether any substantial damage is apparent or ascertainable." *Menefee v. Ostawari*, 228 Cal.App.3d 239, 246 (1991).

Plaintiff disagrees.   A contract claim "accrues when the plaintiff discovers, or could have discovered through reasonable diligence, the injury and its cause." *Angeles Chem. Co. v. Spencer & Jones*, 44 Cal.App.4th 112, 119 (1996).   Moreover, the discovery rule applies "where the harm flowing from those breaches [of contract] will not be reasonably discoverable by plaintiffs until a future time." *Gryczman v. 4550 Pico Partners, Ltd.*, 107 Cal.App.4th 1, 4–5 (2003).

*Description of Evidence In Support Of This Affirmative Defense:*

Plaintiff was terminated on December 2, 2016.   Thereafter, Plaintiff waited nearly a year to the day of his termination, and filed his DFEH complaint on November 30, 2017.   Accordingly, any alleged discriminatory, harassing, or retaliatory conduct that occurred prior to November 30, 2016 is time barred.

Plaintiff alleges that certain oral promises were made to him prior to his hire. As Plaintiff clearly had knowledge of the alleged breaches prior to November 13, 2013, they claims are  time barred.

**Third Affirmative Defense**:   Any recovery on Plaintiff's Complaint, or any purported cause of action alleged therein, is barred under the equitable doctrines of consent, waiver, estoppel, and unclean hands.

*Elements Required to Establish This Affirmative Defense:*  Defendant must prove that Plaintiff either consented, waived claims or was estopped it to assert them due to his potential unclean hands.

*Description of Evidence In Support Of This Affirmative Defense:*

See "*Description of Evidence In Support Of First Affirmative Defense*" in Section 8(a) above.

**Fourth Affirmative Defense**: Any recovery on Plaintiff's Complaint, or any purported cause of action alleged therein, is barred in that Plaintiff's alleged injuries or damages, if any, were not caused by the acts or omissions of Defendant.

*Elements Required to Establish This Affirmative Defense:*

See Section 7 above, setting forth the elements required to establish Plaintiff's claims.

*Description of evidence in support of this Defense:*

See "*Description of Evidence In Support Of First Affirmative Defense,*" section 8(a) above.

**Tenth Affirmative Defense**:  Plaintiff's Complaint, and each purported cause of action therein, is barred because any action taken with respect to Plaintiff's employment was based on good cause, and for legitimate, non-discriminatory and non-retaliatory reasons.

*Elements Required to Establish This Affirmative Defense:*  Defendant acted with a good faith belief that its actions were reasonable under the circumstances and were not taken for discriminatory and/or retaliatory reasons.

*Description of Evidence In Support Of This Affirmative Defense:*

Defendant will present evidence that its action against Plaintiff were reasonable under the circumstances.  Defendant will also show that it would have made the same employment decisions toward plaintiff in any case for legitimate, nondiscriminatory and non-retaliatory business reasons.  *See Harris v. The City of Santa Monica* (2013) 54 Cal.4th 203, 241 ("When a Plaintiff has shown by a preponderance of the evidence that discrimination was a substantial factor motivating his termination, the employer is entitled to demonstrate that legitimate, non-discriminatory reasons would have led it to make the same decision at the time.  If the employer proves by a preponderance of the evidence that it would have made the same decision for lawful reasons, then the Plaintiff cannot be awarded damages, back pay, or an order of reinstatement.")

*Description of Evidence In Support Of This Affirmative Defense:*

See "*Description of Evidence In Support Of First Affirmative Defense,*" section 8(a) above.

**Eleventh Affirmative Defense**: Any recovery on Plaintiff's Complaint, or any purported cause of action alleged therein, is barred because this Court lacks jurisdiction due to the exclusivity of remedy under the California Workers' Compensation Act, Labor Code § 3200 *et seq*.

*Elements required to establish this affirmative defense:*

Defendant will demonstrate that certain of the claims made by plaintiff in this case relate to injuries or damages that are solely compensable pursuant to the California Workmen's Compensation Act. Cal. Lab. Code, § 3600 *et seq.*; *see, e.g., Shoemaker v. Myers* (1990) 52 Cal.3d 1, 25 ["Even if such conduct may be characterized as intentional, unfair or outrageous, it is nevertheless covered by the workers' compensation exclusivity provisions."].

*Description of Evidence In Support Of This Affirmative Defense:*

Plaintiff has claimed that Defendants provided him a workspace which did not

have necessary ergonomic accommodations. Plaintiff also claims that he suffered issues due to the fact that dogs were allowed in the branch he worked in, and there was dust in the air. These alleged issues and damages should have been raised in a workers compensation claim.

**Fourteenth Affirmative Defense**:  Plaintiff's claims are barred, in whole or in part, and/or recovery is precluded because Defendant's conduct was not willful.

*Elements Required to Establish This Affirmative Defense:*  Defendants did not willfully fail to pay wages owing and/or expenses owed to Plaintiff.

*Description of Evidence In Support Of This Affirmative Defense:*

As noted in the "*Description of Evidence In Support Of First Affirmative Defense*" section above, Plaintiff was repeatedly requested to provide information and documentation regarding his expenses, which he failed to do.  Plaintiff also was not owed any monies at the time he was terminated.  Moreover, as discussed above, Plaintiff suffered no damages as a result of any willful conduct by Defendant.  Rather, each of the activities undertaken by Defendant was done for valid business reasons.

**Fifteenth Affirmative Defense**:  Plaintiff's claim for waiting-time penalties under Labor Code §203 is barred, in whole or in part, because Defendant's conduct was not willful.

*Elements Required to Establish This Affirmative Defense:*  Defendants did not willfully fail to pay wages owing and/or expenses owed to Plaintiff.

*Description of Evidence In Support Of This Affirmative Defense:*

As noted in the *Description of Evidence In Support Of [First] Affirmative Defense* section above, Plaintiff was repeatedly requested to provide information and documentation regarding his expenses, which he failed to do.  Moreover, as discussed in Section C above, Plaintiff suffered no damages as a result of any willful conduct by

Defendant.  Plaintiff was not owed any monies as of the date of his termination.  Further, this Court has already adjudicated that Plaintiff was not owed a fourth year bonus.

**Sixteenth Affirmative Defense**:  Plaintiff's Complaint and each alleged cause of action is barred, in whole or in part, because Plaintiff has received all income, compensation and pay to which he has ever been entitled by virtue of his employment with Defendant.

*Elements Required to Establish This Affirmative Defense:*  Defendants did not willfully fail to pay wages owing and/or expenses owed to Plaintiff.

*Description of Evidence In Support Of This Affirmative Defense:*

As noted in the "*Description of Evidence In Support Of First Affirmative Defense*" section above, Plaintiff was repeatedly requested to provide information and documentation regarding his expenses, which he failed to do.  Moreover, as discussed in Section C above, Plaintiff suffered no damages as a result of any willful conduct by Defendant.  Rather, each of the activities undertaken by Defendant was done for valid business reasons.  Plaintiff was not owed any monies as of the date of his termination.  Further, this Court has already adjudicated that Plaintiff was not owed a fourth year bonus.

**Seventeenth Affirmative Defense**:  Plaintiff's Complaint, and each purported cause of action alleged therein, is barred in whole or in part because any duty or obligation by Defendant to pay wages, whether contractual or otherwise, which Plaintiff claims is owed to him has been fully performed, satisfied and/or discharged.

*Elements Required to Establish This Affirmative Defense:*  Defendants did not fail to pay wages owing and/or expenses owed to Plaintiff.

*Description of Evidence In Support Of This Affirmative Defense:*

As noted in the "*Description of Evidence In Support Of First Affirmative Defense*"

section above, Plaintiff was repeatedly requested to provide information and documentation regarding his expenses, which he failed to do. Moreover, as discussed in Section C above, Plaintiff suffered no damages as a result of any willful conduct by Defendant. Rather, each of the activities undertaken by Defendant was done for valid business reasons. Plaintiff was not owed any monies as of the date of his termination. Further, this Court has already adjudicated that Plaintiff was not owed a fourth year bonus.

### Defendants U.S. BANCORP, U.S. BANCORP INSURANCE SERVICES, LLC, and U.S. BANK:

(b)   *Defendants U.S. Bancorp, U.S. Bancorp Insurance Services, LLC, and U.S. Bank intend to pursue the following affirmative defenses:*

**First Affirmative Defense (Failure To State A Cause of Action)**:   Plaintiff's Complaint, as a whole, and each purported cause of action alleged therein, fails to state facts sufficient to constitute a cause of action against Defendant.

*Elements Required to Establish This Affirmative Defense:*   See Section 7 above, setting forth the elements required to establish Plaintiff's claims.

*Description of Evidence In Support Of This Affirmative Defense:*

See the "*Description of Evidence In Support Of First Affirmative Defense*" section above, setting forth the key evidence in opposition to Plaintiff's claims. These Defendants did not employ Plaintiff.

**Second Affirmative Defense**:   To the extent discovery may disclose a basis for such defense, any recovery on Plaintiff's Complaint, or any purported cause of action alleged therein, is barred by the applicable statute of limitations including, but not limited to, California Code of Civil Procedure §§ 335.1, 338 and 340; California Government Code §§ 12960 and 12965; and California Business and Professions Code §17208.

*Elements Required to Establish This Affirmative Defense:*  A plaintiff seeking relief for violation of the Fair Employment and Housing Act ("FEHA") must file an administrative complaint with the DFEH within one year of the date the alleged unlawful practice occurred.   Gov. Code § 12960(d).   Under the FEHA, exhaustion of administrative remedies is "a jurisdictional prerequisite to resort to the court." *Johnson v. City of Loma Lind*, 24 Cal.4th 61, 70 (2000); *see also Campbell v. Regents of Univ. of Cal*. (2005) 35 Cal.4th 311, 321.)   The court has no jurisdiction to hear a cause of action under FEHA, absent a timely and sufficient underlying charge filed with the DFEH.

*Description of Evidence In Support Of This Affirmative Defense:*

Plaintiff was terminated on December 2, 2016.   Plaintiff waited nearly a year to the day of his termination, and filed his DFEH complaint on November 30, 2017. Accordingly, alleged discriminatory, harassing, and retaliatory conduct that occurred prior to November 30, 2016 is time barred.

**Third Affirmative Defense**:   Any recovery on Plaintiff's Complaint, or any purported cause of action alleged therein, is barred under the equitable doctrines of consent, waiver, estoppel, and unclean hands.

*Elements Required to Establish This Affirmative Defense:*   Plaintiff's claims are equitably barred because of his waiver, estoppel and unclean hands.

*Description of Evidence In Support Of This Affirmative Defense:*

These Defendants did not employ Plaintiff.   Please also see the "*Description of Evidence In Support Of First Affirmative Defense*" section 8(a) above.

**Fourth Affirmative Defense**:   Any recovery on Plaintiff's Complaint, or any purported cause of action alleged therein, is barred in that Plaintiff's alleged injuries or damages, if any, were not caused by the acts or omissions of Defendants.

*Elements Required to Establish This Affirmative Defense:*  These Defendants did not cause any of Plaintiff's alleged injuries or damages.

*Description of Evidence In Support Of This Affirmative Defense:*

These Defendants did not employ Plaintiff, and, accordingly, were not part of the alleged acts or activities about which Plaintiff complains, nor did they cause him to suffer any injuries or damages.

**9.   DISCOVERY**

Discovery is closed, with the exception of the deposition of Defendants' expert witness Gary England, which is set for February 13, 2020.

All disclosures under F.R.Civ.P. 26(a)(3) have been made with the exception of any additional witnesses listed on the witness list.

**10.   WITNESS LISTS**

Witness lists of the parties have been filed with the Court.

With the exception of witnesses objected to, only the witnesses identified in the lists will be permitted to testify (other than solely for impeachment).

The parties stipulate to the following: the parties object to the use of deposition testimony in lieu of live testimony where the witness is within the subpoena power of the court. However, for those witnesses outside the subpoena power of the court, who do not otherwise physically appear, the parties do not have an objection to the use of their deposition testimony in lieu of live testimony and are amenable to meeting and conferring regarding the testimony to be offered in advance of the pre-trial conference at which time the parties can so advise the court.  Defendants reserve the right to utilize deposition testimony in the event a witness is unavailable.

Defendants object to Plaintiff's witness list as follows:

**9-16, 21-28, 30-31**: Witnesses 14-16, 21-28, and 30 were not previously identified in discovery or in Plaintiff's disclosures as potential witnesses and for this reason alone should be excluded. Witnesses 9-16 and 31's testimony also presumably relates to

1    alleged customer complaints that are irrelevant to Plaintiff's claims. Federal Rule of
2    Evidence 401. Their testimony would cause undue delay and a would constitute an
3    undue waste of time. Federal Rule of Evidence 403. Further, these witness declarations
4    were also not produced to Defendants until January 22, 2020 at an expert deposition.

5        Plaintiff disagrees with Defendants' objections. Witnesses 21-28 are current and
6    former employees of Defendants who were not properly disclosed by Defendants even
7    though they had direct knowledge of the reasons for Plaintiffs' termination and attended
8    the meeting in which Defendants decided to terminate Plaintiff.  Plaintiff could not
9    disclose witnesses he did not know existed and should not be penalized for Defendants'
10   failure to disclose them.  Moreover, Witnesses 9-16 and 31 have direct information
11   regarding customer complaints and violations of securities laws that are at the heart of
12   Plaintiff's claim that he was retaliated against for disclosing complaints to Defendants
13   and their management. The testimony of these witnesses is highly relevant and should be
14   allowed by the Court.  Exclusion of these witnesses is highly prejudicial to Plaintiff.

15       **19**: Despite attempts to subpoena Plaintiff's designated expert Dr. Erik Viirre for
16   deposition, he was never made available and thus his testimony should be excluded.
17   Plaintiff disagrees with Defendants' position.  Dr. Erik Viirre is not a retained expert, but
18   Plaintiff's treating physician that was fully disclosed to Defendants.  Defendants' failure
19   to enforce their subpoena or arrange for deposition at a time convenient to the witness
20   should not disallow his testimony, which will establish that Plaintiff is disabled and was
21   under Dr. Viirre's care at the time of Plaintiff's employment with Defendants.  Dr. Viirre
22   will also testify as to his certification of Plaintiff's FMLA request, which was granted by
23   Defendants' third party administrator, the Hartford.

24       **29**: Despite attempts to subpoena Katrina Arden, Mr. Arden was out of the
25   country and never made available to Defendants and thus her testimony should be
26   excluded.  Plaintiff disagrees. Ms. Arden was disclosed by Plaintiff as a relevant witness.
27   Defendants' failure to properly subpoena Ms. Arden should not prevent her testimony.

28

CASE NO.:  2:17-cv-08670 CBM(AFMx)    28        [PROPOSED] FINAL PRETRIAL
                                                CONFERENCE ORDER

## 11.    JOINT EXHIBIT LIST

The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1. Unless all parties agree that an exhibit shall be withdrawn, all exhibits will be admitted without objection at trial, with the exception of the following exhibits:

Plaintiff objects to Exhibit 314 on the grounds that it was withheld in discovery pursuant to the attorney-client privilege and any probative value is outweighed by prejudice to Plaintiff as outlined in motion *in limne no* 3. Federal Rules of Evidence 403. Plaintiff also objects to Exhibits 372-377 as outlined in motion *in limne* no 1. Federal Rules of Evidence 402 and 602.

Plaintiff reserves the right to object to Exhibits 350-359, 361-364 at trial.

Defendants object to Exhibit 1 as lacking foundation.  Federal Rule of Evidence 402.

Defendants object to Exhibit 122 as irrelevant, lacking foundation, and its probative value is outweighed by unfair prejudice to Defendants and/or could lead to confusion by the jury.  Federal Rules of Evidence 402 and 602.  Defendants also object to Exhibit 122 under the best evidence rule.  Federal Rule of Evidence 1002.

Defendants object to Exhibit 143 because pleadings, including unverified complaints, are not admissible evidence.

Defendants also object to Exhibits 145 and 146 as hearsay and which are the subject of its motions *in limine* nos. 1 and 2 as outlined below.  Federal Rules of Evidence 702 and 801.

Defendants also reserve the right to object to Exhibits 100-118, and 136-142.

## 12.    LAW AND MOTION

Only motions *in limine* remain to be heard.  The motions *in limine* were filed on January 21, 2020 per the Court's orders.

Pending:

1.  Motions *in limine*

a. Plaintiff has filed four motions *in limine*:

    i. To Exclude Expert Testimony of Bruce L. Ross

    ii. To Exclude Defendants from Arguing that Plaintiff Was Not On Protective Disability Leave

    iii. To Exclude Evidence Not Disclosed by Defendants Based On Attorney-Client Privileged and Later Disclosed

    iv. To Exclude Testimony of Defendants' Expert Witnesses Whose Depositions Have Not Yet Been Set

b. Defendants filed eight motions in limine:

    i. To Exclude Rule 26 Report of Plaintiff's Expert John Maine

    ii. To Exclude or Limit Rule 26 Report and Testimony of Plaintiff's Expert Michelle Mangan

    iii. To Exclude Use of Word Disability or Disabled

    iv. To Exclude Speculative Evidence Re Economic Damages

    v. To Exclude Incidents Barred by Statute of Limitations

    vi. To Exclude Incidents Barred by Statute of Limitations Cal. Labor Code section 1102.5)

    vii To Bifurcate Liability and Damages

    viii. To Exclude Declarations and Lay Opinions of Jim Fogerty and Wanda Gordon

## 13. BIFURCATION OF ISSUES (L.R. 16-4.3)

Defendants have requested that the Court bifurcate the issue of liability and damages. Defendants further request that the Court bifurcate the trial of any claim of punitive damages. Defendants request that issues of liability be tried in the first phase of trial, compensatory/non-compensatory damages be tried in the second phase and issues relating to punitive damages tried in the third phase if necessary. Defendants request that trial be bifurcated in order to avoid an unnecessary waste of time and resources.

**14.  PRETRIAL CONFERENCE ORDER**

The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

Dated:  February _____, 2020

_____
The Honorable Consuelo B. Marshall
United States District Court Judge

APPROVED AS TO FORM AND CONTENT:

/s/ Brandon S. Reif
_____
Brandon S. Reif
Rachel D. Dardashti
REIF LAW GROUP, P.C.
Attorneys for Plaintiff,
WILLIAM DAN GOTSES

/s/ Theresa M. Marchlewski
_____
Theresa M. Marchlewski
Stephen M. Phillips
Jason M. Yang
JACKSON LEWIS P.C.
Attorneys for Defendants
U.S. BANCORP; U.S. BANCORP
INSURANCE SERVICES, LLC; U.S. BANCORP
INVESTMENTS, INC.; AND U.S. BANK

4822-9975-9540, v. 1